ROBERTSON, Justice:
The appellant, Mrs. Leona Boutwell, ad-ministratrix of the estate of Clarence H. Boutwell, deceased, appeals from a judgment of the Circuit Court of Lamar County in favor of Camay Drilling Company, a Corporation, Herman Parkman, and Val-gene McKee. The trial judge directed a verdict for each of the defendants, and the principal assignment of error is that the trial judge erred in excluding the evidence offered by the plaintiff and in directing a verdict for the defendants on motion made at the close of the plaintiff’s testimony. After an appeal had been perfected, Camay Drilling Company settled with the plaintiff for $12,500, and the appeal was dismissed as to Camay Drilling Company and Val-gene McKee, if he were found to be an agent or employee of Camay.
About noon on February 16, 1963, Clarence H. Boutwell was instantly killed when a D-7 bulldozer operated by Valgene McKee backed over him as it moved eastward to pick up a load of dirt in a busy construction area between two drilling rigs.
Camay Drilling Company had been employed by the Atomic Energy Commission to drill two large diameter holes in the Tatum Salt Dome in Lamar County for the use of NASA at its testing facility. Ca-may was in the process of erecting two drilling rigs with the center holes about 105 feet apart. Drilling rig 4 was on the north, and drilling rig 3 was on the south. The substructure of each rig extended about 35 feet into the space between the two rigs. The two rigs fronted east on a north-south road. The area around these two rigs was congested as only construction drilling sites can be with trucks busily engaged in moving in large diameter pipes, heavy timbers, drilling machinery, pumps and myriad other materials and equipment to erect and equip drilling rigs that would eventually be about 136 feet high.
Camay, through its drilling superintendent, John Steele, contacted Wright Mud and Chemical Company on the morning of February 16, 1963, and requested that a backhoe with an operator be sent to the drilling site. The backhoe was located on and attached to the back end of a Ford tractor. Boutwell, the operator, was put to work on a slushpit to be dug just west of drilling rig 4. In the meantime, Conners, project engineer for Camay, and Steele contacted Herman Parkman, who owned and operated heavy dirt-moving machinery and who was at that time working on the Big Chief drilling site about 150 yards south of the Camay drilling site. They requested Parkman to send Valgene McKee with his D-7 Caterpillar bulldozer over to Camay as soon as he finished his work at Big Chief.
McKee reported to Steele at the Camay drilling site about 10:30 that morning. Steele pointed out to McKee the stakes for the slushpit which he wanted him to finish with his bulldozer. The slushpit was to be approximately 25 feet wide by 30 feet long and about 3 feet deep. Boutwell had dug with his backhoe a hole large enough for the bulldozer of McKee to operate in. Boutwell was instructed by Steele to move his backhoe out of the way and to stand by to dig a drainage ditch as soon as McKee had finished the slushpit. McKee moved his bulldozer into the hole dug by Boutwell and proceeded to dig out the pit between the stakes, pushing the dirt out into the lane between the two drilling rigs being erected. We use McKee’s own words from the witness stand to tell what then happened :
A. Well, after I had dug the pit that Mr. Steele told me to dig out — you *671 know, to the stakes — this immediate area, well, Mr. Boutwell come over after I got that dirt pushed off and told me that they wanted this hole, this ditch sloped out in the front so that they could back this truck back in there and sit the mud pumps down when they got the foundation poured. So, I did — -I got back in the pit and sloped it out and pushed that waste dirt off.
Q. In other words, at the time this accident happened, you were doing what Mr. Boutwell told you ?
A. More or less. Yes, Sir.
Q-He was the one supervising you?
A. That’s right.
Q. Now, the last time you say you saw Mr. Boutwell he was standing by his backhoe?
A. He was.
Q. Was this after you had done the work that John Steele had told you to do ?
A. Yes, Sir.
Q-Now, Valgene, Mr. Andrews asked you a question that you might have been — you might have seen Mr. Boutwell if you had been looking? You looked, didn’t you?
A. Yes, Sir. I looked back. There wasn’t anybody behind me when I started backing up. And as I approached this piece of pipe here I turned and looked to my left, backing down side of it to keep from hitting it with my track and about that time I felt my tractor hit something on the right and I knew something had rolled out there or come out in the area after I had looked back because this — there wasn’t anything there, cause I had bladed it off just as clean as that floor right there. There wasn’t anything there; there wasn’t even any clods or roll of dirt or anything — it was just bladed off plain or clean.
Q. In other words, what you meant to Mr. Andrew’s question was that if you had been looking right at him all the time—
A. I could have — if it had been one of my children, it would have been all the same thing. I just didn’t know there was anybody behind me. There wasn’t supposed to be anybody in that area. It is just like a child walk out from behind a car in the path of another car; that’s just the way it happened.
The backhoe was parked to the north and east of the lane between the two rigs in which the bulldozer was working, and McKee testified that the last time he saw Boutwell that he was leaning on one of the big wheels of the backhoe watching the bulldozer work.
If the plaintiff has proved negligence against any defendant, it would have to be by the testimony of Valgene McKee, a bulldozer operator of twenty years’ experience, who was called as an adverse witness by the plaintiff, and the gist of whose testimony has been heretofore stated. After the plaintiff had rested, all three defendants moved, by separate motion, for a directed verdict.
In ruling on the motion made on behalf of Valgene McKee, the operator of the bulldozer, the trial judge reasoned:
“For the purpose of this motion, the testimony introduced is assumed to be true. However, I am aware that testimony of Mr. McKee was as an adverse witness. Yet, his testimony has not been disputed in one way — one word, or even one syllable. It may not be true, but it is all the testimony as to how it happened. He was operating the tractor or bulldozer or caterpillar, as directed by Camay Drilling Company. And this last operation that he was doing was at the *672 direction of Mr. Boutwell himself, who said that they wanted that pit sloped off so that a truck could back down in there.
“Taking the testimony of Mr. McKee, he has shown no negligence on his part whatsoever, because it is a normal operation that [as] he backed up to look on one side and then to look on the other, which he said he did. It is true that he looked on the right side first — and on which side the deceased was.
“And, seeing nothing, he looked then on the left side to make certain he was safe over there, and after that the accident happened.
“So far as this record is concerned, God alone knows how that thing happened, how come the deceased there. * * *."
We agree with the trial judge, who observed and listened to each witness as he testified from the witness stand, that no negligence was proved against the operator of the bulldozer. A man has lost his life as a result of a tragic accident, but in order to recover damages a case of negligence must be proved against somebody.
Trucks were moving in and out of the area; machinery, materials, and equipment were being unloaded; motors of both drilling rigs were running; and there was noise and congestion as there usually is in a drilling construction area. The bulldozer operator was doing the job that he was employed to do under rather difficult circumstances. He was operating a 37,000-pound D-7 bulldozer, which is a ponderous and unwieldy piece of equipment at best. The deceased was not working at the time; he was standing by waiting for the bulldozer operator to finish the work that he, Boutwell, had advised him needed to be done. All the deceased had to do was to keep out of the way of the bulldozer; he had worked in oil fields and around heavy equipment many times and he knew the hazards involved.
If there were any negligence, it was the negligence of the deceased that was the sole proximate cause of this tragic accident. He has paid for his negligence with his life.
Because of the lack of evidence of any negligence on the part of the bulldozer operator, the judgment of the trial court must be affirmed.
Affirmed.
GILLESPIE, P. J., and PATTERSON, INZER and SMITH, JJ., concur.